Edward S. Enck and Maryllyn B. Enck v. Commissioner.
Enck v. Commissioner
Docket No. 6714-65.
United States Tax Court
T.C. Memo 1967-58; 1967 Tax Ct. Memo LEXIS 203; 26 T.C.M. (CCH) 314; T.C.M. (RIA) 67058; March 27, 1967
Maryllyn B. Enck, pro se, 4309 N. Pershing Dr., Arlington, Va. George K. Dunham, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the Federal income tax liability of petitioners for the year 1963 in the amount of $726.68. That part of the deficiency is here in issue which results from respondent's disallowance of two items in the deduction for "Medical Expenses" taken by petitioners in their return for that year: one for $1,668, paid to Florida Central Academy and one for $675, paid to Adirondack Woodcraft Camp. With regard to these two items the return included a note reading: "Adirondack Woodcraft Camp and Florida Central Academy for son on advice of Dr. Ralph W. Wadeson, Jr., Psychiatrist." Findings of Fact The parties have filed a short stipulation *204 of facts. We incorporate herein this stipulation and the exhibits attached thereto. Petitioners, who are husband and wife, live in Arlington, Virginia, and filed their Federal income tax return for the taxable year with the district director of internal revenue at Richmond, Virginia. Dennis Enck is the son of Edward and the stepson of Maryllyn. He was a minor during the taxable year 1963 and was a dependent of Edward. When Dennis was about a year old his father and mother were divorced. At some time not disclosed by the record, Edward married Maryllyn. Some two years thereafter the mother of Dennis prepared to remarry or remarried. Deciding that she no longer wanted the child, she "put him up for adoption." Thereupon Edward and Maryllyn took Dennis into their home and have had the custody of him ever since. By the time Dennis came into the custody of petitioners, according to the history later given to the psychiatrist who was called upon to treat Dennis, he "had suffered rather a complete and total rejection and a lot of abuse at the hands of his own mother." After Dennis was taken into petitioners' home and prior to the taxable year, Dennis on occasion stole money from petitioners, *205 injured property by setting fires, and ran away from home. To the extent (not specified in the record) that he set fires he was dangerous to himself and others. After he would do one of these things, he would feel great remorse and become depressed. He had no friends his own age, had difficulty concentrating in school, and was a serious disciplinary problem to petitioners and to his teachers. At this time, Dennis was attending a public school in Arlington, Virginia. In 1962 petitioners consulted Dr. Ralph W. Wadeson, Jr., with regard to Dennis. Dr. Wadeson holds the degree of Doctor of Medicine and is a psychiatrist and psychoanalyst licensed as such in the States of Alabama, Illinois, Maryland, and in Washington, D.C. Dr. Wadeson also saw and conferred with Dennis. Based upon these consultations and examinations, Dr. Wadeson concluded that Dennis was mentally ill and diagnosed his condition "as having a depressive reaction characterized by feelings of worthlessness, sadness, despondency," resulting from "an impulse disorder which means * * * that this boy lacked enough self-control to control his actions at all times." In the opinion of Dr. Wadeson, the depressive reaction of Dennis *206 was "a rather common diagnosis in psychiatric patients" and was a medically recognized mental illness. In his opinion a mental illness is "a condition which disables the person from performing in a manner that is individually productive and socially acceptable." As a result of his diagnosis of Dennis, Dr. Wadeson recommended to petitioners that Dennis be sent to the Florida Central Academy during the school year and to the Adirondack Woodcraft Camp in the summer, which in his opinion would be "structured" environments which would help Dennis in the area of impulse control "so that he would gain better self-control and thereby improve and help clear up his depression and be a more functional socially acceptable boy." This school and this camp had been recommended to Dr. Wadeson by the School Guidance Center located at 3000 Connecticut Avenue, N.W., Washington, D.C., and operated by a person who had an extensive knowledge of schools which were willing to take children with emotional problems. Dr. Wadeson had no personal knowledge of either the school or the camp but was informed by the person operating the School Guidance Center that Florida Central Academy was a relatively small school *207 founded by a retired Army officer with a faculty largely made up of retired military men, that the students there were placed in small groups working in established routines under the "relatively close" and "better than ordinary" supervision of and in close contact with the teachers, that the camp had the facilities usual in a summer camp for boys, but it had "a better than average program" and the camp counselors were "perhaps a little higher caliber than the ordinary camp counselor." Dr. Wadeson had referred other boys to both the Florida Central Academy and the Adirondack Woodcraft Camp, "and they had benefitted." Neither the academy nor the camp had a physician or a psychiatrist on its staff. The attendance by Dennis of the academy and camp was recommended by Dr. Wadeson as a cure, mitigation, or treatment of Dennis's psychiatric condition. In Dr. Wadeson's opinion, Dennis would be benefitted by being in "a more closely supervised environment than the one in which he was living," that he would relate better to school authority than to parental authority, and that he would be helped by being with other children of his own age Dr. Wadeson considered two other alternative treatments: *208 (1) individual psychotherapy "on a several times a week basis" or (2) institutional psychiatric care which in his opinion was unnecessary in the case of Dennis. Both of these alternative treatments would have been more expensive than the one recommended, a consideration which was important to petitioners who were persons of moderate means. [1]
Because of Dr. Wadeson's recommendation, petitioners sent Dennis to Florida Central Academy and Adirondack Woodcraft Camp during the taxable year. The amounts paid therefor by petitioners are not in dispute. The payments were for "lump sum" charges, including charges for room and board, which had to be paid in order that Dennis might attend the academy and the camp. Dr. Wadeson examined Dennis again after he had attended the academy and the camp and formed the opinion that Dennis "seemed calmer and less depressed and apparently was making a good adjustment to the school situation." Opinion KERN, Judge: In spite of our sincere sympathy for petitioners and in spite of the persuasive arguments which they have ably presented in well-written briefs, it is our opinion that this case falls within the ambit of H. Grant Atkinson, Jr., 44 T.C. 39. *209 We have set forth in our finding with completeness and in a manner as favorable to petitioners' contentions as is justified by the record all the facts which are established by the testimony herein. These facts do not support a conclusion that either the Florida Central Academy or the Adirondack Woodcraft Camp was "a special school for a mentally * * * handicapped individual" within the meaning of section 1.213-1 (e)(1)(v)(a), Income Tax Regs. See H. Grant Atkinson, Jr., supra at 53. Neither Dr. Wadeson nor petitioner Maryllyn (the only two witnesses who testified at the trial of this case) appeared to have any personal knowledge of the school or camp here in question. Dr. Wadeson's information about them came from the School Guidance Center, and Maryllyn's information appears to have come from Dr. Wadeson. No brochure or prospectus of either the school or the camp was introduced into evidence. The only information other than that concerning supervision and established routines which is pertinent was to the effect that the school was "willing to take children with emotional problems," but there is no evidence that either the school or the *210 camp offered any special program or had any special resource designed for the alleviation of mental illnesses or for the treatment and training of "a mentally * * * handicapped individual." Dr. Wadeson had "referred other boys there and they had benefitted," but there is no evidence of the mental condition of the "other boys" or as to the way in which "they had benefitted." Under the authority of the cited case we decide the issue presented herein in favor of the respondent. Decision will be entered for the respondent. Footnotes
1. Petitioners' income tax return for 1963 indicates that Edward received in that year salary in the amount of $12,304.78, and Maryllyn received salary in the amount of $5,588.28↩